UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANDREW M. CISAN | CASE NO. 1:19-cv-1358 |
| | |
| | JUDGE SARA LIOI |
| PLAINTIFF, | |
| | |
| vs. | **MEMORANDUM OPINION** |
| | |
| ANDREW M. SAUL | |
| Commissioner of Social Security, | |
| | |
| | |
| DEFENDANTS. | |

Plaintiff Andrew Cisan ("Cisan") appeals from the decision of respondent Andrew Saul, Commissioner of Social Security ("Commissioner"), denying his Title II application for a period of disability and disability insurance benefits. (Doc. No. 13, Petitioner's Brief on the Merits ["P. Br."].) Commissioner filed an opposition (Doc. No. 16 ["Opp'n"]), and Cisan replied (Doc. No. 17 ["Reply"]). For the reasons set forth below, the Court affirms Commissioner's decision.

**I.     BACKGROUND**

Cisan filed a Title II application for a period of disability and disability insurance benefits on December 2, 2014 with a protective filing date of November 28, 2014. (Doc. No. 11, Transcript ["Tr."] at 514, 124.[1]) His date last insured ("DLI") for the Title II claim was December 31, 2011. (*Id.* at 295–96.) He originally claimed a disability onset date of December 31, 2011. (*Id.* at 514.) Although there is considerable confusion as to whether or not Cisan amended the onset date and,

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

if he did, what the amended date is,[2] there is no meaningful difference in the analysis if the onset date is set anytime between September 1 and December 31, 2011. Cisan later filed a Title XVI application for supplemental security income on December 15, 2016 with a protective filing date of June 16, 2015. (*Id.* at 83.)

Administrative Law Judge ("ALJ") Cheryl Rini was initially assigned the case but retired before reaching a decision. (P. Br. at 1115.) Subsequently the case was transferred to ALJ Joseph Hajjar. (*Id.* at 1115; Tr. at 88.) At step one of the sequential evaluation, ALJ Hajjar found Cisan had not engaged in substantial gainful activity since December 31, 2011. (Tr. at 297.) At step two, the ALJ found Cisan suffered from schizoaffective disorder-bipolar type and attention deficit hyperactivity disorder since the protective filing date of his Title XVI application. (*Id.* at 298.) But there was "no evidence that those impairments, or any others, were both medically determinable and caused more than minimal limitations in functioning during the period relevant to the Title II claim." (*Id.*) Accordingly, the ALJ denied Cisan's Title II claim at step two and continued his analysis of Cisan's Title XVI claim. (*Id.*) At step five, the ALJ found Cisan was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy[]" and was not disabled in regard to his Title XVI claim. (*Id.* at 306.)

---

[2] During the November 22, 2016 hearing before ALJ Rini, Cisan's attorney made an oral request to amend the onset date to September 16, 2011. (Tr. at 219.) Later during that hearing, ALJ Rini said "the onset date … is going to be September 16, 2011[.]" (*Id.* at 256; see also *Id.* at 253.) But then during the March 1, 2017 hearing, ALJ Rini said that Cisan had made an oral request to amend the onset date to September 1, 2011. (*Id.* at 127.) ALJ Rini also noted the date Cisan was first insured was October 1, 2011, and because Cisan "would not be insured or entitled to benefits until October 1, 2011" that had to be the onset date. (*Id.* at 131.) During the same hearing, ALJ Rini informed medical examiner Dr. Len that the relevant time period was from September or October of 2011 to December 31, 2011 (*Id.* at 172.)

In his brief, Cisan claims the onset date was amended to September 16, 2011. (P. Br. at 1132 n.5). And Commissioner, in his opposition brief, did not object to an onset date sometime between September or October of 2011. (Opp'n at 1148.) ALJ Hajjar's decision sets December 31, 2011 as the onset date. (Tr. at 298.) The Appeals Council considered the onset date to be December 31, 2011 but "determined [his] condition was not disabling on any date through 12/31/2011." (*Id.* at 325.)

Cisan then requested review by the Appeals Council, which "denied [Cisan's] request with respect to the Title II claim" but "vacated the hearing decision and remanded the case … with respect to the Title XVI claim on the grounds that it had been improperly escalated[.]" (*Id.* at 83.) Accordingly, only Cisan's Title II claim is before the Court.

## II.  STANDARD OF REVIEW

Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). If there is substantial evidence to support Commissioner's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

## III.  LAW AND ANALYSIS

Cisan argues that "the ALJ failed to build a logical bridge connecting the evidence of record with his result" and "did not go on to explain *why* the evidence of record was insufficient to allow [] Cisan to surpass the *de minimis* Step Two hurdle[.]" (P. Br. at 1133, 1134 (emphasis in original).) Cisan claims that the opinions of several groups of sources show there is not substantial evidence

3

to support the ALJ's decision: (1) the treatment notes by Dr. Mahfoud, Dr. Parthasarathy, Dr. Gottesman, Dr. Zober, and Dr. Marko; (2) the testimonies of Cisan and his father, Anatole Cisan ("Anatole"); and (3) Dr. Len's testimony. (*Id.* at 1134.) Commissioner argues that "the ALJ explained his rationale at step two" and "reasonably determined that [Cisan] did not have a severe impairment as of December 2011."[3] (Opp'n at 1146–47.) The Court will first discuss the lack of medical evidence in this case and then address Cisan's arguments.

### A. Medical evidence from the relevant time period

"In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). And "[t]o surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was disabled[.]" *Despins v. Comm'r of Soc. Sec.,* 257 F. App'x 923, 929 (6th Cir. 2007). Therefore, to qualify for DIB, Cisan was required to show, with objective medical evidence, that he was disabled during the period September 1, 2011 to December 31, 2011 ("relevant time period").[4]

Here, there is only one medical record for the relevant time period. (Tr. at 131, 212; Opp'n at 1145.) It is a clinical note from Cisan's appointment with Dr. Zober on October 3, 2011, where

---

[3] In Commissioner's brief, he claims there is substantial evidence to support the ALJ's decision based on Cisan's income in 2010 and 2011 and inconsistencies in Cisan's testimony regarding the end of his employment in September of 2011. (Opp'n at 1147–48.) But the ALJ did not cite either as a reason for rejecting Cisan's Title II claim. "The Commissioner … cannot cure a deficient opinion by offering explanations that were not offered by the ALJ." *Lutizio v. Berryhill*, No. 1:17-cv-1805, 2018 WL 3537130, at *15 (N.D. Ohio July 23, 2018) ("reject[ing] the Commissioner's *post hoc* rationalizations[]" because they "were not articulated by the ALJ, either as reasons for rejecting [a medical] opinion or generally in her discussion of the medical evidence[.]"). Accordingly, the Court will not consider these arguments.

[4] Cisan's alleged onset date is sometime between September 1, 2011, as amended by Cisan, (Tr. at 127), and December 31, 2011, as originally claimed by Cisan. (*Id.* at 514.) His DLI was December 31, 2011. (*Id.* at 295–96.)

4

Dr. Zober noted what medications Cisan was taking and his decision to increase some of Cisan's medications. (Tr. at 905.) All of the other evidence Cisan presented either predated the onset date or postdated the DLI. Therefore, the ALJ found that, for the relevant time period—September 1, 2011 through December 31, 2011—"there is no evidence that those impairments [schizoaffective disorder-bipolar type and attention deficit hyperactivity disorder], or any others, were both medically determinable and caused more than minimal limitations in functioning[.]" (*Id.* at 298.)

The Sixth Circuit's decision in *Seely*, involving similar facts, is both instructive and directly on point. *Seeley v. Comm'r of Soc. Sec.,* 600 F. App'x 387 (6th Cir. 2015). In *Seely*, as in this case, there were only two pieces of medical evidence from the relevant time period and they did not "suggest[] that [the c]laimant was unable to perform basic work activities[,]" the ALJ "terminated analysis at step two, determining that [the c]laimant did not suffer from a severe impairment before … the DLI[,]" and the "[c]laimant contend[ed] this decision was not supported by substantial evidence." *Id.* at 388, 390. The court held there was substantial evidence to support the ALJ's finding that the claimant was not disabled because the "doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition[.]" *Id.* at 390 (quoting *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001)).

Similarly, in *Higgs,* there was no medical evidence from the relevant period that showed the claimant was disabled. *Higgs v. Bowen,* 880 F.2d 860, 864 (6th Cir. 1988). The claimant argued she had three conditions that warranted a finding of disability: a cardiac condition, arthritis, and hypertension. But, for the relevant time period, there was no medical evidence regarding a cardiac condition or hypertension and, while there was a medical record diagnosing her with arthritis, that record was "silent regarding any limitation of joint motion, as well as the intensity, frequency, and duration of arthritic pain." *Id.* at 863–84. The court concluded substantial evidence supported the

5

Appeals Council's decision to discount a treating source's opinion and likewise to "discount [the claimant's] subjective descriptions of her symptoms[]" because they were "not backed by objective clinical findings." *Id.* The court held that "the Appeals Council's decision to dismiss this case at the step two severity stage, on consideration of the medical evidence alone, was warranted by the facts and in accord with the law." *Id.* at 864.

Likewise, the instant case "presents the exceptional 'totally groundless' claim properly dismissed on the medical evidence alone" because "[t]here is nothing in the objective medical record credibly suggesting that [the claimant] was significantly affected by any of her impairments on or before [the DLI]." *Id.* at 863. The ALJ determined that a single clinical note detailing only Cisan's medications did not show that Cisan had a medically determinable mental impairment. (Tr. at 298.) Therefore, the ALJ's determination at step two that Cisan was not disabled was supported by substantial evidence.

### B. Opinion Evidence

Social Security "regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR No. 96–6p, 1996 WL 374180, at *2 (July 2, 1996). For that reason:

> an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013) (citing § 404.1502, 404.1527(c) (2017)).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not give the treating source opinion controlling weight, he must weigh it based on the factors in § 404.1527(c). *Id.* Comparatively, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Id.* Still, those opinions are similarly weighed based on the factors in § 404.1527(c). *Id. See also Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

The § 404.1527(c) factors include the (1) examining relationship, (2) treatment relationship (including, the length of treatment relationship and frequency of examination and the nature and extent of the treatment relationship), (3) supportability (how much relevant evidence the source has presented to support the medical opinion), (4) consistency with the record, (5) specialization of the source, and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(1)–(6); (f)(1).

### 1. Treating Sources

Dr. Zorbo and Dr. Marko are treating sources, as they are certified psychologists who treated Cisan for several years. (*See* 20 C.F.R. § 404.1513; P. Br. at 1129; Tr. at 1101.) The ALJ did not give either treating source's opinion controlling weight, as he noted they were inconsistent with the medical evidence from the relevant time period and were offered years after the DLI. (Tr. at 303, 304.)

"Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004). Still, such

evidence may be considered if it (1) is "supported by relevant and objective evidence[,]" such as "contemporaneous evidence as to [the c]laimant's mental condition during" the relevant time, *id.* at 845, and (2) "relate[s] back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.,* 87 F. App'x 478, 480 (6th Cir. 2003). *See also Cutlip,* 25 F.3d at 287; *Barnett v. Sec'y of Health & Human Servs.*, 812 F.2d 1406 (table), 1987 WL 36614, at *3 (6th Cir. 1987).

### i. Dr. Marko

Cisan argues that Dr. Marko's opinion shows there was not substantial evidence to support the ALJ's decision. (P. Br. at 1134.) Commissioner claims "Dr. Marko's retrospective opinion does little to support [Cisan's] contention that the ALJ erred in not finding his mental health conditions a severe impairment in December 2011.[5] (Opp'n at 1150.)

The ALJ explained his reasons for assigning "little weight" to Dr. Marko's December 16, 2016 opinion. First, "Dr. Marko was not treating [Cisan] during the relevant period. (Tr. at 304.) Second, "the record shows that [Cisan] was only seen once by his psychiatrist during the period, an office visit for which there are sparse notes." (*Id.* (record citation omitted).) Third, "there are not subjective or objective findings supporting a conclusion that the claimant's condition during that period was so bad as to render him disabled." (*Id.*) Fourth, "[a]lthough [Cisan's] medication was increased, such an increase does not equate to disability." (*Id.*) In all, the ALJ described "Dr. Marko's opinion regarding the claimant's functioning during the period of September through December 2011 [as] purely speculative." (*Id.*)

---

[5] Commissioner also argues substantial evidence supports the ALJ's decision to afford little weight to Dr. Marko's opinion because it was inconsistent with Cisan's testimony about the end of his employment in September 2011. (*See* Opp'n at 1147–48, 1149–50). But the ALJ did not include this as one of his reasons for giving Dr. Marko's opinion little weight. Accordingly, the Court will not credit this argument. *See Lutizio*, 2018 WL 3537130 at *15.

The ALJ properly applied the factor analysis, namely the treatment relationship and supportability factors, to evaluate Dr. Marko's retrospective opinion. *See Seeley,* 600 F. App'x at 391 (finding substantial evidence to support the ALJ's decision to give low weight to mental health evaluations by the claimant's treating sources because "those reports were made almost 10 years after the DLI[,]" neither "doctor examined [the c]laimant prior to the DLI[,]" and one of the reports "did not document any related diagnosis, complaints of symptoms, or corresponding medical treatment for anxiety or depression prior to [the c]laimant's DLI[]"); *Ruland v. Comm'r of Soc. Sec.,* No. 1:18-cv-1191, 2019 WL 1369187, at *10 (N.D. Ohio Mar. 8, 2019), *report and recommendation adopted sub nom. Ruland v. Berryhill*, 2019 WL 1367352 (N.D. Ohio Mar. 26, 2019) (holding that the ALJ's decision to give little weight to a treating medical source's opinion was supported by substantial evidence when that source "was not treating with [the claimant] during the relevant period[,]" "rendered his opinion more than 4 years past the date last insured, and was commenting on a time period several years before his treating relationship with the claimant began[]"); *Clendening v. Astrue*, No. 5:09-cv-2111, 2011 WL 1130448, at *5 (N.D. Ohio Mar. 28, 2011) (concluding that "[t]he ALJ was justified in rejecting [treating sources' retrospective] opinions since neither doctor had firsthand knowledge of [the claimant's] condition prior to the date last insured[]").

Cisan also argues that, as Dr. Marko opined, the increase in medications "indicate[s] a change in condition." (Reply at 1155; Tr. at 1101.) Cisan argues that the difference between the ALJ's interpretation and Dr. Marko's interpretation of the note shows that the ALJ "substitut[ed] his own lay opinion for that of a medical professional[]" and that the opinions of Dr. Marko, Dr. Zober, and Dr. Len were consistent with the medical record. (P. Br. at 1135; Reply at 1156.)

"Although an ALJ may not substitute his or her opinions for that of a physician," "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence[.]" *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Here the ALJ determined that Dr. Marko's opinion of the note was entitled to "little weight"—providing good reasons for that determination—and, accordingly, did not adopt her interpretation of it; that is not substituting his lay opinion for Dr. Marko's opinion. *See Morris v. Barnhart*, 223 F. App'x 465, 469 (6th Cir. 2007) (two isolated changes in medication did not warrant an inference of episodes of decompensation); *Jacobsen v. Colvin*, No. 5:16-cv-438, 2016 WL 7335810, at *5 (N.D. Ohio Oct. 21, 2016), *report and recommendation adopted sub nom. Jacobsen v. Comm'r of Soc. Sec.,* 2016 WL 7329986 (N.D. Ohio Dec. 16, 2016) (changes in medications "did not show that [claimant's] impairments actually worsened"); *Yost v. Comm'r of Soc. Sec.,* No. 4:13CV1116, 2014 WL 4245946, at *15 (N.D. Ohio Aug. 25, 2014) (medical record evidencing medication changes did not support an inference that claimant's bipolar disorder was a severe impairment).

Therefore, there is substantial evidence to support the ALJ's decision to afford little weight to Dr. Marko's retrospective opinions.

### ii. Dr. Zorbo

Cisan argues that Dr. Zorbo's opinion shows there was not substantial evidence to support the ALJ's decision. (P. Br. at 1134.) Commissioner argues: "Dr. Zober's [2014] opinion offers little support for [Cisan's] contention that he was disabled on his onset of disability date" because "Dr. Zober provided no indication that his opinion related to [Cisan's] impairments and functioning in December 2011." (Opp'n at 1150.) The ALJ assigned "little weight" to Dr. Zober's March 9, 2015 statement because "it was completed more than 3 years after [Cisan's] date last insured[,]" is "not supported by treatment notes or other medical evidence[,] and is not consistent

with the record as a whole[.]" (Tr. at 303.) The ALJ properly applied the factor analysis, in particular the treating relationship, consistency, and supportability factors. Importantly, the retrospective opinion is not supported by objective medical evidence from the relevant time period. *See Cutlip,* 25 F.3d at 287.

Nor does Cisan argue that Dr. Zober's March 9, 2015 opinion relates back to the relevant time period. (Opp'n at 1150.) The ALJ's decision to discount the retrospective opinion of a treating medical source is supported by substantial evidence when the claimant does not argue that the opinion related back to the condition during the relevant time period. *See e.g., Francis v. Saul,* No. 5:19-cv-1510, 2020 WL 2781490, at *3 (N.D. Ohio May 29, 2020) (holding the ALJ's decision to deny DIB was supported by substantial evidence because the "medical evidence cited by [the claimant] … post-dates the relevant period in this case" and because the claimant failed to show "how the post-DLI medical evidence relates back to his condition during the relevant time period"); *Logan v. Comm'r of Soc. Sec.,* No. 1:17-cv-1905, 2018 WL 3208184, at *9 (N.D. Ohio June 28, 2018) (holding the ALJ properly disregarded treating sources' opinions when the claimant "does not attempt to argue that any of these [retrospective] opinions were formed during or related back to the relevant time period[]").

Accordingly, there is substantial evidence to support the ALJ's decision to afford "little weight" to Dr. Zober's retrospective opinion.

### 2. Dr. Len

Medical expert Dr. Len was a nonexamining source, as she reviewed Cisan's medical file to give her opinion. (Tr. at 161–63.) The ALJ gave "[l]ittle weight" to Dr. Len's testimony for two reasons. (*Id.* at 304.) First, it "was not consistent with Social Security rules and regulations." (*Id.*)

Second, "it was not based on or consistent with medical records[,]" namely, Dr. Zober's October 3, 2011 clinical note. (*Id.*)

Cisan questions what "rules and regulations" the ALJ refers to. (P. Br. at 1135). The Court is similarly unclear what these violated rules and regulations were. According to Commissioner, Dr. Len did not comply with "rules and regulations" because her testimony was not limited to the relevant time period. (Opp'n at 1148–49.) But, as Cisan notes (Reply at 1156–57), this argument is a *post hoc* rationalization rather than a reason articulated by the ALJ. Therefore, the Court will not consider the argument. *See Lutizio,* 2018 WL 3537130 at *15.

Still, as Commissioner notes, the ALJ weighed Dr. Len's testimony and determined to afford it little weight based on the consistency factor, which is all he was required to do. (*See* Opp'n at 1149.) "The ALJ … is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Cohen v. Sec'y of Dep't of Health & Human Servs.,* 964 F.2d 524, 528 (6th Cir. 1992) (internal citations omitted.); *see also Cutlip,* 25 F.3d at 287; *Bogle v. Sullivan,* 998 F. 2d 342, 347–48 (6th Cir. 1993).

Accordingly, there was substantial evidence to support the ALJ's decision to give little weight to Dr. Len's opinion.

### 3. Dr. Mahfoud, Dr. Parthasarathy, and Dr. Gottesman

Cisan is correct that the ALJ did not weigh or analyze the opinions of three non-treating sources—Dr. Mahfoud, Dr. Parthasarathy, or Dr. Gottesman. (P. Br. at 1134.) Commissioner argues that the treatment records written by Dr. Mahfoud, Dr. Parthasarathy, and Dr. Gottesman in 2006 are "irrelevant to [Cisan's] alleged onset of his disability five years later." (Opp'n at 1149.)

District courts in this circuit have repeatedly held that an ALJ does not err in failing to assign weight or analyze a medical source's opinion that pre-dates the alleged onset date. *See*

*Hinson v. Berryhill,* No. 1:17-cv-00012, 2019 WL 952120, at *8 (M.D. Tenn. Feb. 27, 2019), *report and recommendation adopted,* 2019 WL 1755503 (M.D. Tenn. Apr. 19, 2019) (holding that a clinical note was not relevant to the disability decision because it was written more than four years before the onset date and because the claimant did "not argue that [the] clinical note evidenced a progressive condition"); *Hill v. Comm'r of Soc. Sec.,* No. 17-cv-10089, 2018 WL 1404416, at *7 (E.D. Mich. Feb. 27, 2018), *report and recommendation adopted* 2018 WL 1399174 (E.D. Mich. Mar. 19, 2018) ("The ALJ did not err in giving [a treating physician's opinion that predated the onset date] limited weight."); *Hitsman v. Comm'r of Soc. Sec.,* No. 2:16-cv-12708, 2017 WL 3887172, at *6 (E.D. Mich. Aug. 18, 2017), *report and recommendation adopted,* 2017 WL 3877212 (E.D. Mich. Sept. 5, 2017) ("[I]t would have been an appropriate exercise of the ALJ's discretion to exclude [a treating source's opinion given more than six years before the onset date]."); *Moore v. Colvin*, No. 14-cv-12310, 2015 WL 4066735, at *4 (E.D. Mich. July 2, 2015) ("This Court has repeatedly stated that an ALJ is limited to considering medical evidence rendered after the alleged onset date."); *Strevel v. Colvin*, No. 3:14-cv-50, 2015 WL 1034717, at *12 (E.D. Tenn. Mar. 10, 2015) ("[I]t is doubtful that the ALJ was under an obligation to give [a treating source's examination that predated the alleged onset date by more than three years] any consideration."); *Ramey v. Astrue*, No. 2:08-cv-083, 2009 WL 537200, at *5 (E.D. Tenn. Mar. 3, 2009) ("The ALJ did not err in disregarding evidence … which significantly predates the alleged onset of disability.").

Further, this case is distinguishable from those where district courts held it was error for the ALJ to ignore an opinion given before the onset date. For example, in *Dimizio v. Berryhill*, No. 2:16-cv-6, 2017 WL 4078948 (E.D. Tenn. Sept. 13, 2017), the court held that the ALJ's decision was not supported by substantial evidence because the ALJ afforded a treating physician's opinion

13

given four months before the onset date little weight. *Id.* at *4. And in *O'Malley v. Comm'r of Soc. Sec.,* 210 F. Supp. 3d 909 (S.D. Ohio 2016), the court held that an ALJ's decision was not supported by substantial evidence because the treating physician's pre-onset opinion was consistent with evidence from the relevant time period. *Id.* at 915. But here, the ALJ disregarded the opinions of nontreating sources given five years before the onset date, and the opinions were not consistent with medical evidence from the relevant time period.

Moreover, "an ALJ's failure to mention a treating physician's opinion, which was based on the claimant's condition before the alleged onset date, is harmless error." *Mohssen v. Comm'r of Soc. Sec.,* No. 12-cv-14501, 2013 WL 6094728, at *11 (E.D. Mich. Nov. 20, 2013). For example, in *Heston*, the Sixth Circuit concluded that the ALJ's failure to refer to and assign weight to a treating physician's report, which predated the relevant time period by nine months, was harmless error. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535–36 (6th Cir. 2001); *see also Lanthron v. Comm'r of Soc. Sec.,* No. 3:18-cv-689, 2019 WL 1258785, at *5 (N.D. Ohio Jan. 31, 2019), *report and recommendation adopted*, 2019 WL 5729826 (N.D. Ohio Nov. 5, 2019) (concluding that the ALJ's failure to analyze and weigh the opinions of a treating source and a nontreating source, which predated the onset date, was harmless error because "the ALJ weighed and analyzed other medical opinion evidence that fell within the disability period … [and] discusse[d] the evidence of record at length[]"); *Mohssen,* 2013 WL 6094728 at *11 (holding that the ALJ's failure to "explicitly state what weight she was giving" the opinion of a treating source, given one year before the onset date, was at most harmless error).

Here, the opinions of Dr. Mahfoud, Dr. Parthasarathy, and Dr. Gottesman were given more than five years before Cisan's onset date in a three-month period during which Cisan had a psychiatric episode. (Tr. at 965–66, 686–689, 717–18, 301.) No medical evidence from the

14

relevant time period suggests that Cisan continued to suffer from the symptoms described. (*Id.* at 905.) And even if the ALJ was wrong to ignore the pre-onset opinions of these nontreating sources, it was harmless error just as it was for the ALJs in *Mohssen*, *Lanthron*, and *Heston* to ignore the pre-onset opinions of treating sources.

Therefore, the ALJ's failure to weigh or analyze the opinions of Dr. Mahfoud, Dr. Parthasarathy, and Dr. Gottesman is not reversible error.

### 4. Anatole Cisan's Testimony

Anatole, Cisan's father, is a non-medical source. *See* 20 C.F.R. § 404.1513(d)(4) (2013). The ALJ explained that he afforded him "only some weight" because his testimony was "inconsisten[t] with the objective medical evidence and medical opinions of record" and because "he does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms." (Tr. at 304–05.) The ALJ properly noted how much weight he assigned Anatole and justified that determination based on the consistency and supportability factors. Accordingly, the ALJ's decision to assign Anatole's testimony "some weight" is supported by substantial evidence.

### 5. Andrew Cisan's Testimony

Cisan is correct that the ALJ did not explain why he did not weigh or analyze Cisan's own testimony in regard to the Title II determination.[6] (P. Br. at 1134.) But this is not reversible error.

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs

---

[6] Comparatively, the ALJ did extensively analyze Cisan's testimony in regard to the Title XVI determination and found it was inconsistent with the evidence in the record. (*See* Tr. at 301–303.)

and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7P, 1996 WL 374186, at *1 (July 2, 1996) (superseded by SSR 16-3P).[7] In *Wood v. Comm'r of Soc. Sec.,* No. 1:08-cv-882, 2010 WL 1253992 (S.D. Ohio Feb. 18, 2010), *report and recommendation adopted,* 2010 WL 1253989 (S.D. Ohio Mar. 24, 2010), the court held that there was substantial evidence to support the ALJ's finding, even though the ALJ did not discuss the claimant's testimony concerning one of his alleged symptoms, because there was no objective medical evidence to support that symptom being a severe impairment. *Id.* at *6. *See also Ellison v. Comm'r of Soc. Sec.,* No. 2:16-cv-11332, 2017 WL 990605, at *7 (E.D. Mich. Feb. 22, 2017), *report and recommendation adopted,* 2017 WL 976917 (E.D. Mich. Mar. 14, 2017) ("A subjective recitation of symptomology, standing alone, is insufficient to entitle a claimant to benefits."); *Fenderson v. Comm'r of Soc. Sec.,* No. 15-cv-13219, 2016 WL 5405326, at *4 (E.D. Mich. Sept. 28, 2016) ("Plaintiff's testimony, standing alone, is insufficient to establish that the ALJ erred in finding that [p]laintiff's physical impairments were not severe."); *Edwards v. Comm'r of Soc. Sec.*, No. 12-cv-15153, 2014 WL 354655, at *13 (E.D. Mich. Jan. 31, 2014) (same); *Younan v. Comm'r of Soc. Sec.,* No. 11-cv-13881, 2012 WL 5439286, at *8 (E.D. Mich. Aug. 14, 2012), *report and recommendation adopted,* 2012 WL 5439280 (E.D. Mich. Nov. 7, 2012) ("In considering whether

---

[7] Cisan's Title II application has a protective filing date of November 28, 2014 when SSR 96-7P was effective. However, since then, that regulation has been superseded by SSR 16-3P. The Sixth Circuit has not determined if SSR 16-3P applies retroactively. *Brothers v. Berryhill,* No. 5:16-cv-1942, 2017 WL 2912535, at *9 (N.D. Ohio June 22, 2017), *report and recommendation adopted sub nom. Brothers v. Comm'r of Soc. Sec.*, 2017 WL 2908875 (N.D. Ohio July 7, 2017). Regardless, SSR 16-3P similarly provides "[w]e will not find an individual disabled based on alleged symptoms alone." SSR 16-3P, 2016 WL 1119029, at *4 (March 16, 2016).

a claimant has a severe impairment, an ALJ need not accept … a claimant's subjective complaints."); *Weckbacher v. Comm'r of Soc. Sec.,* No. 2:11-cv-659, 2012 WL 2809697, at *9 (S.D. Ohio July 10, 2012) (same).

Here, the ALJ found that Cisan:

> has been diagnosed with the above-listed conditions [schizoaffective disorder-bipolar type and attention deficit hyperactivity disorder], each of which has caused more than minimal limitations in his ability to perform basic work activities since the protective filing date of the claimant's Title XVI application [June 16, 2015]. However, there is no evidence that those impairments, or any others, were both medically determinable and caused more than minimal limitations in functioning during the period relevant to the Title II claim. For instance, the claimant was doing well prior to the alleged onset date, which is also the date last insured, and the few treatment notes regarding his mental health around then do not indicate a change in his condition[.]

(Tr. at 298 (record citation omitted).) Therefore, regardless of Cisan's testimony, because there was no medical evidence from the relevant period to show a medically determinable impairment existed that could reasonably be expected to produce Cisan's symptoms, his testimony could "not be the basis for a finding of disability." SSR 96-7P, 1996 WL 374186 at *1.

Accordingly, there is substantial evidence to support the ALJ's finding, even though he did not explain his evaluation of Cisan's testimony.

### IV.   CONCLUSION

For the foregoing reasons, the Court affirms Commissioner's decision to deny Cisan's application for Disability Insurance Benefits.

**IT IS SO ORDERED**.

Dated: August 14, 2020

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**